IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JEANE E. HUDSON, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:22-cv-00612-O-BP |
| § | |
| COMMISSIONER OF § | |
| SOCIAL SECURITY, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Jeane Elaine Hudson ("Hudson") applied for Disability Insurance Benefits ("DIB") under the Social Security Act ("SSA"). The Commissioner denied her application, deciding that she was not disabled. Hudson appeals. Because the Commissioner applied the correct legal standards in assessing Hudson's medical limitations, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision and **DISMISS** this case with prejudice.

I.     **BACKGROUND**

Hudson first applied for DIB on January 28, 2016, alleging disability due to the combined effects of multiple sclerosis, degenerative disc disease, high cholesterol, anemia, colon removal, depression, and anxiety. Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 12-1 at 115-16. The Commissioner denied Hudson's application initially and upon reconsideration. *Id.* at 128, 146. Seeking to challenge the Commissioner's denial, Hudson requested a hearing before an Administrative Law Judge ("ALJ") (*id.* at 201-02), who conducted the hearing (*id.* at 36) and affirmed the Commissioner's decision in 2018. *Id.* at 160. Hudson appealed the decision to the

Social Security Appeals Council ("AC"), which vacated the ALJ's decision and remanded the case for new proceedings. Tr. 165-68. ALJ Darren Hamner reheard Hudson's case on August 26, 2020, and found that Hudson was disabled. Tr. 173-77. On October 27, 2020, the AC initiated a review of ALJ Hamner's decision and vacated and remanded the case on December 7, 2020 because the decision contained errors of law. Tr. 182-94.

ALJ Hamner also conducted the third hearing on May 17, 2021, and affirmed the Commissioner's decision, holding that Hudson was not disabled. *Id.* at 18. The AC denied further administrative review. *Id.* at 1; *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) ("[T]he Commissioner's decision does not become final until after the [AC] makes its decision denying the claimant's request for review."). Thereafter, Hudson filed this civil action seeking judicial review of the Commissioner's decision under 42 U.S.C. §§ 405(g), 1383(c)(3). ECF No. 1. She claims that the Commissioner's decision "is contrary to law and not supported by substantial evidence." ECF No. 16 at 3.

## II.    STANDARD OF REVIEW

Title II of the SSA, 42 U.S.C. §§ 401-434, governs the disability insurance program. A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id*. § 423(d)(1)(A). To determine whether a claimant is disabled and thus entitled to DIB, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. § 404.1520.

First, the claimant must not be presently doing any substantial gainful activity. *Id*. § 404.1520(a)(4)(i). "Substantial gainful activity" is work that "involves doing significant physical or mental activities" for pay or profit. *Id*. § 404.1572. Second, the claimant must have a severe

impairment or combination of impairments. *Id*. § 404.1520(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the federal regulatory list. See *id*. § 404.1520(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1). Before proceeding to steps four and five, the Commissioner assesses the claimant's residual functional capacity ("RFC") and considers her past relevant work ("PRW"). See *id*. § 404.1520(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite [her] limitations," *id*. § 404.1545(a)(1), while PRW means work the claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id*. § 404.1560(b)(1).

Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her PRW considering her RFC. *Id*. § 404.1520(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id*. § 404.1520(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept to

support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)).

"A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id*. (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris*, 209 F.3d at 417; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## III. ANALYSIS

The Commissioner, acting through the ALJ, completed the five-step evaluation process here. *See* Tr. 15-26. First, the ALJ found that Hudson had not engaged in substantial gainful activity since January 8, 2016. Tr. 17. Second, he found nine medically severe impairments: multiple sclerosis, degenerative disc disease of the cervical and lumbar spine, post-laminectomy syndrome, chronic pain syndrome, obesity, osteoarthritis of bilateral feet, knees, shoulders and hands, depressive disorder, anxiety disorder, and somatic symptom disorder. *Id*. at 18. The ALJ also found eleven nonsevere medical impairments. *Id*. Third, he identified no impairment or combination of impairments that qualified under the federal regulatory list. *Id*. The ALJ then assessed Hudson's RFC:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) in that she can lift 10 pounds occasionally, lift 5 pounds frequently, stand/walk for 2 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. The claimant

4

>can occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl, but can never climb ladders, ropes or scaffolds. She can frequently, but not constantly, perform reaching, handling, and fingering. The claimant is limited to detailed but not complex job tasks. The claimant cannot work around hazards, such as unprotected heights or dangerous moving machinery.

*Id.* at 18. Using this RFC determination and hearing testimony from a vocational expert ("VE"), the ALJ determined at step four that Hudson could perform PRW, specifically as a typist, docket entry clerk, and general clerk. *Id.* at 26. The step-four finding meant that Hudson was ineligible for DIB because she was not disabled. *Id.*; *see Lovelace*, 813 F.2d at 58. After finding that Hudson's age, education, work experience, and RFC with additional limitations still allowed her to perform the requirements of other jobs, the ALJ then found Hudson "not disabled" under Sections 216(i) and 223(d) of the SSA. Tr. 26.

Hudson does not challenge the ALJ's findings at steps one through three in the evaluation process. She challenges the ALJ's RFC determination, contending that the ALJ's analysis of the treating source opinions were defective. ECF No. 16 at 5. Hudson argues that both Dr. Bhupesh Dihenia and Dr. David Kuban were treating physicians and that the ALJ erred by assigning "little" or "partial" weight to their opinions without conducting the detailed analysis required under Section 404.1527. *Id*. at 11. Moreover, Hudson argues that when the ALJ did address the 404.1527 factors, his discussion was highly selective, overlooked significant evidence, or made statements that were "simply false." *Id*.

To support her argument, Hudson invokes *Newton v. Apfel*, in which the 5th Circuit concluded that, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)." 209 F.3d 448, 453 (5th Cir. 2000); *see Kneeland v.*

*Berryhill*, 850 F.3d 749, 760 n.52 (5th Cir. 2017) (noting the *Newton* criteria now appear in 20 C.F.R. § 404.1527(c)); *accord* 20 C.F.R. § 416.927(c) (the SSI counterpart). The *Newton* criteria apply only to SSA applications like Hudson's that were filed before March 27, 2017, and they favor medical opinions from a claimant's "treating source," with such opinions sometimes deserving "controlling weight" in the ALJ's disability determination. 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also Newton*, 209 F.3d at 455 ("The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability.").

The Commissioner, however, argues that neither Dr. Dihenia nor Dr. Kuban were treating sources and, therefore, the ALJ was not required to apply *Newton* before assigning weight to their decisions. ECF No. 17 at 7-9. All that was required from the ALJ was that he consider the opinions. *Id*. at 6-10.

    **A.**    **Dr. Dihenia was not a treating physician, and the ALJ applied proper legal standards in considering his medical opinion.**

A treating physician is one who "provides [the plaintiff], or has provided [the plaintiff], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the plaintiff]." 20 C.F.R. § 404.1527(2). For a plaintiff to have an ongoing treatment relationship with an acceptable medical source, the medical evidence must establish that the plaintiff "sees, or [has] seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [her] medical condition(s)." *Id*. The Commissioner will not consider an acceptable medical source to be a "treating source" if the plaintiff's relationship with the source "is not based on [her] medical need for treatment or evaluation, but solely on [her] need to obtain a report in support of [her] claim for disability." *Id*.

Hudson saw Dr. Dihenia three times in three years: on October 29, 2014, for a blood test (Tr. 659-62), on September 22, 2015, for a barium swallow (Tr. 667), and on May 20, 2016, for a physical examination (Tr. 1277-78). The records of these visits are sparse, with one of the three appointments occurring before the alleged onset of her disability. Moreover, nothing in the opinions addresses the medical issues that Hudson raised. Thus, the Court cannot hold that Plaintiff saw Dr. Dihenia as a treating source. *Hernandez v. Heckler*, 704 F.2d 857, 860–61 (5th Cir. 1983) (holding that a physician who had only seen the claimant twice in a 17–month period and was "no more familiar with [the claimant's] injuries, course of treatment, and responses over a considerable length of time than were other physicians" was not a treating source); *McCoy v. Astrue*, No. 4:09-CV-517-A, 2010 WL 5812954, at *5 (N.D. Tex. 2010), *rec. adopted* 2011 WL 597019 (N.D. Tex. 2011) (finding that a physician with "a history of only intermittent, infrequent treatment arguably lacks the detailed, longitudinal perspective of a claimant's impairment that would qualify him as a treating physician"). Consequently, the ALJ was not obligated to analyze Dr. Dihenia's opinion under *Newton* as medical opinions from non-treating physicians generally "do not carry the same 'considerable weight.'" *Robinson v. Astrue*, 271 F. App'x 394, 396 (5th Cir. 2008).

Nevertheless, the ALJ still must consider the opinion under 20 C.F.R. §§ 404.1527(c). *See id.* Here, the ALJ considered Dr. Dihenia's opinion, first by summarizing it:

> Bhupesh Dihenia, M.D. submitted a statement in May 2016, and noted a diagnosis of relapsing remitting multiple sclerosis, with symptoms of leg weakness, imbalance and severe fatigue (Exhibit 8F). This doctor assigned a sedentary exertion level with postural and manipulative restrictions. Dr. Dihenia opined that the claimant would be off task 70% of the workday and would miss 5 or more workdays per month. This opinion is given partial weight, as a sedentary level of exertion is supported by Dr. Dihenia's own notes, which include the use of a pain pump and pain medications, and fatigue (Exhibit 8F/3) However, the opinion regarding time off task and absenteeism is inconsistent with the objective findings reported by the claimant's pain management specialist, including a normal gait on physical examinations, and the claimant's report that she required no assistance with daily activities (Exhibits 7F, 10F, 14F, 20F).

7

Tr. 23. The ALJ's summary shows that he considered the opinion and recognized that Dr. Dihenia had a relationship with the plaintiff by citing to the accompanying medical source records. *Id.* at 1013, 1276, 1286, 1391, 1786. *see* 20 C.F.R. §§ 404.1527(c)(1). Moreover, the ALJ did not completely reject Dr. Dihenia's opinion, but rather gave it "partial weight." The ALJ gave weight to Dr. Dihenia's finding of "a sedentary level of exertion" and, accordingly, all the jobs that the ALJ found that Hudson could perform at Step Five were sedentary in nature. Tr. 26. This further demonstrates that the ALJ considered Dr. Dihenia's medical opinion.

Additionally, the ALJ did not err by assigning partial weight to other portions of Dr. Dihenia's opinion. When considering the medical opinion, the ALJ can evaluate the supportability and consistency factors as they relate to that opinion. The ALJ found that Dr. Dihenia's report was inconsistent with other medical opinions in the record and Hudson's own testimony. Tr. 23; *see* 20 C.F.R. §§ 404.1527(c)(3)-(4) (supportability and consistency factors). The ALJ discussed a pain management specialist's report and Hudson's personal testimony earlier in his analysis at Step Four, when he evaluated the other evidence in the record. He noted that Hudson had a narcotic pain pump implanted in 2014, which was removed in 2019. Tr. 22, 1295, 1853-54. While having the pain pump, Hudson displayed some hand swelling, joint tenderness, and decreased range of motion, but repeatedly demonstrated normal gait as early as April 2016 (Tr. 1191) and as late as March 2020 (Tr. 1861). Additionally, she reported on numerous occasions that she required no assistance with daily activities. Tr. 1192, 1282, 1294, 1394, 1806. Following the removal of the pain pump, in April 2020, Hudson claimed that she was no longer having consistent back pain and was more active. Tr. 2099. She stated in May 2020 that the medication adequately controlled her pain and that she was able to ride a horse three to four times a week. Tr. 2375.

An ALJ does not err if he considers a medical opinion and, nonetheless, finds that substantial evidence supports a contrary position to the opinion. *Martinez v. Chater*, 64 F.3d 172, 175 (5th Cir. 1995). Substantial evidence is a relatively low threshold, "more than a mere scintilla and less than a preponderance." *Boyd*, 239 F.3d at 704 (5th Cir. 2001). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id*. Thus, the ALJ relied on substantial evidence indicating that Dr. Dihenia's opinion regarding Hudson's ability to stay on task and absenteeism due to her pain was inconsistence with other evidence in the record.

The only possible error that the ALJ may have committed is by not specifying that Dr. Dihenia was a specialist in neurology. Tr. 23; *see* 20 C.F.R. §§ 404.1527(c)(5). The Commissioner generally gives more weight to the medical opinion of a specialist about medical issues related to his area of specialty than to the medical opinion of a source who is not a specialist. *Id*. However, the ALJ still may discount the opinion of a specialist if substantial evidence supports a contrary opinion. *Rollins v. Astrue*, 464 F. App'x 353, 358 (5th Cir. 2012). Thus, any error committed by the ALJ by not specifying that Dr. Dihenia was a neurology specialist is harmless.

Because Hudson did not otherwise show any harmful error, the ALJ's decision shows that he sufficiently Dr. Dihenia's opinion under 20 C.F.R. §§ 404.1527, 416.927, and reversal is not required on this point.

**B.     Dr. Kuban was not a treating physician, and the ALJ applied proper legal standards in considering his medical opinion.**

As stated above, a treating source must have an ongoing relationship with the plaintiff, and the plaintiff may not see the physician solely in relationship to her disability claim. 20 C.F.R. § 404.1527(2). Hudson saw Dr. Kuban once on February 3, 2020, through the Disability Advantage Group, an organization dedicated to assisting claimants with obtaining Social Security disability

benefits. Tr. 1552-53. Hudson's single visit to Dr. Kuban to bolster her social security claim is not sufficient to make him a treating source whose opinion had to be analyzed in detail. *See Newton*, 209 F.3d at 453.

The ALJ still was required to consider the opinion under 20 C.F.R. §§ 404.1527(c), which the ALJ did here. He summarized Dr. Kuban's medical opinion and commented on its weight, as follows:

> David Kuban D.O. submitted a statement in February 2020, and noted impairments of chronic pain syndrome, depression, anxiety and multiple sclerosis (Exhibit 16F). He also assigned a sedentary exertional level and opined that the claimant would be off task 70% of the workday and would miss 5 or more workdays per month. Again, this opinion is given partial weight, as a sedentary level of exertion is supported by Dr. Kuban's notes use of medication for chronic pain (Exhibit 16F/1-2). But his opinion regarding time off task and absenteeism is inconsistent with the objective findings as discussed [with Dr. Dihenia's report]. In addition, Dr. Kuban indicated that the claimant displayed marked limitations in areas of sustained concentration and persistence, and extreme limitations in adaption (Exhibit 16F/4-5). This opinion is given little weight as it is unsupported by the history of limited mental health treatment with only prescribed psychotropic medication (Exhibits 22F, 26F).

Tr. 24. The ALJ recognized the relationship between Dr. Kuban and Hudson and cited accompanying medical source records. Tr. 24, 1548-49, 1551-52; *see generally* Tr. 1938-2074, 2268-2412. His summary showed that he considered the medical opinion and, as with Dr. Dihenia, did not completely reject Dr. Kuban's opinion. He gave some parts "partial weight" and other parts "little weight." Tr. 24. The ALJ assigned weight to Dr. Kuban's sedentary limitations and incorporated those limitations into possible jobs that Hudson could perform at Step Five. Tr. 26

The ALJ evaluated the supportability and consistency factors of Dr. Kuban's medical opinions, once again finding the doctor's medical opinion regarding time spent off task and absenteeism inconsistent with the report from the pain management specialist and Hudson's own testimony. Tr. 24; *see* 20 C.F.R. §§ 404.1527(c)(3)-(4). As stated above, the pain management

10

specialist's analysis was enough to establish an inconsistency between Dr. Kuban's opinion and other objective evidence in the record.

Additionally, the ALJ found that Hudson's limited history of mental health treatment did not support Dr. Kuban's marked limitations in areas of sustained concentration and persistence and extreme limitations in adaption. Tr. 24. In reaching this decision, the ALJ relied on the assessment of state agency consultant Thomas Geary of Hudson's limitations in concentration, persistence, and adaptation. *Id*. The SAPC based his opinion on Hudson's lack of psychiatric hospitalizations or emergent care and the fact that her mental status exams did not show significant deficits. Tr. 24, 138. Moreover, the ALJ cited to medical opinions showing that Hudson had a history of limited mental health treatment with only prescribed psychotropic medications. *See generally* Tr. 1938-2074, 2268-2412; *see also Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (holding that "the ALJ was not precluded from relying upon the lack of treatment as an indication of nondisability"). Thus, substantial evidence in the record supported the ALJ's findings regarding Dr. Kuban's opinions. Because the ALJ considered Dr. Kuban's medical opinion, there was no harmful error in his analysis, and substantial evidence supports his findings. The ALJ applied the proper legal standards, and his consideration of Dr. Kuban's opinions does not require reversal.

## IV. CONCLUSION

Dr. Dihenia and Dr. Kuban were not treating sources. The ALJ considered their opinions, but only assigned them "little" or "partial weight." Because the opinions were not opinions of treating sources, the ALJ was not required to evaluate the *Newton* factors before disregarding aspects of their opinions. Thus, because there was substantial evidence for the ALJ to reach his decisions, and the ALJ applied the correct legal standards in assessing Hudson's medical

limitations, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision and **DISMISS** this case with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on February 28, 2023.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE